**N. W. ELECTRIC POWER COOPERATIVE, Inc., a Corporation, Appellant,**

v.

**Laverne DAGLEY and Erma Nell Dagley, Respondents.**

No. 22249.

Kansas City Court of Appeals.

Missouri.

April 4, 1955.

---

Russell N. Pickett, Eugene E. Andereck, Phil Hauck, Pickett, Pickett & Andereck, Trenton, for appellant.

Arthur R. Kincaid, Lawson, Hale & Coleberd, Francis G. Hale, Robert E. Coleberd, Liberty, for respondents.

FRED H. MAUGHMER, Special Judge.

This is an appeal from a judgment and decree dismissing the petition and denying injunctive relief to the grantee against the grantors under a right-of-way easement. Appellant, Northwest Electric Power Cooperative, Inc., during 1951 was in the process of constructing an electric transmission line from Missouri City, north of the Town of Fairport, in DeKalb County, Missouri. In October 1951 its tentative, but not yet surveyed right-of-way, crossed a 147-acre farm in Clay County, which was owned by defendants, Laverne and Erma Nell Dagley, who are respondents here.

On October 19, 1951, Woodrow Pace, right-of-way procurement agent for the electric company, called upon defendant Laverne Dagley at the farm. There was some discussion and some negotiation. As a result, Pace wrote and delivered the electric company draft for ten dollars, payable to Laverne Dagley, who soon thereafter cashed it. As a further result, the defendants signed and delivered to Pace the right-of-way easement involved herein.

The easement recites a consideration of ten dollars, and contains the clause:

"Hereby grants, bargains, sells, and conveys to said power company and to its lessees, licensees, successors, and assigns the perpetual easement and right to enter upon the lands of Grantors."

Then follows a legal description of the whole of defendants' 147-acre farm. The document sets forth that grantee can enter, build electric, telephone or telegraph lines, cut brush, and remove obstacles, within fifty feet of the center transmission line; provided that "All brush, structures, improvements, and fire hazards removed shall become the property of the Cooperative, except that Grantor may remove existing structures or improvements prior to their removal or destruction by the Cooperative or its contractors." The easement agreement also required payment to grantors of seven dollars for each pole or anchor located in pasture land and twelve dollars for each such pole or anchor located in cultivated land.

It appears that thereafter the Electric Company made its detailed right-of-way survey and early in 1952 set stakes on defendants' property. Defendants did nothing about it. During the summer of 1953 the brush cleaning contractors of the company entered on the property and started to clean up the right-of-way. Defendants denied their right and forbade their entry.

The contractors ceased operation and removed their equipment.

On September 18, 1953, the Electric Company filed its petition in the Circuit Court of Clay County, praying for a temporary and for a permanent injunction: "Enjoining and restraining Defendants from unlawfully interfering with the enjoyment of the easement," and "for such other Orders, Judgments, and Decrees as may to the Court seem just and proper." Defendants, answering, tendered refund of the ten dollars consideration paid and alleged: (1) The location of the easement, if any, has not been determined, (2) It was procured by fraudulently misrepresenting the proposed location to the defendants, and, (3) It was procured by fraudulently representing to defendants that twelve dollars per pole was the maximum, which the company would pay, but in truth and in fact the company had paid as high as four hundred dollars per pole. By their amended answer, defendants stated that the alleged easement fails to comply with Section 432.010 RSMo 1949, V.A.M.S. (Statute of Frauds), in that it fails to describe the area of land covered.

There were three hearings before the court. Before final determination the Electric Company amended its petition, limiting the claimed easement to the area described and determined by their detailed survey.

The defendant Laverne Dagley testified that the line as located was about 150 yards west of where Pace, the right-of-way agent, told him it would be located. Pace testified that it was about 150 feet west. Dagley also said that if the line was built where actually located, and where the company's contractors were working, it would require cutting some of his trees; that it would take in three stock water tanks and that it would destroy a potential pond site. On page 89 of the transcript this colloquy is reported:

"The Court: It's my understanding that under this easement you claim that you have a right to go through his farm at any place, isn't that correct? Mr. Hauck (attorney for plaintiff): That is correct." After hearing testimony on three separate occasions the trial court dismissed plaintiff's petition and refused to grant the injunction or restraining order.

On the subject of Injunctions, 43 C.J.S., § 14, p. 420, this statement is made: "Injunctive relief is not a matter of right, but its grant or refusal usually rests in the sound discretion of the court, exercised in harmony with well established principles." On page 426: "The court which is to exercise the discretion is the trial court and not the appellate court. The action of the court may be reviewed on appeal or error in case of a clear abuse of discretion, but not otherwise". On pages 513, 514 there is the following comment: "Ordinarily, injunction is not a proper remedy, as an original and independent proceeding, for the trial and establishment of a disputed title to, or right of, possession of property, real or personal, and hence the right or title of one seeking equitable relief by injunction to protect his property must ordinarily be clear or admitted." In 43 C.J.S., footnotes, pp. 513 and 515, the facts in three cases of other jurisdictions are briefly set forth. "Suit will not lie to enjoin interference with the construction of a fence where the real issue concerns a disputed boundary line.—Kateiva v. Snyder, 143 Wash. 172, 254 P. 857."

"Where lease by plaintiff was not for exact quantity of land, and had no definite boundaries, and evidence conflicted as to boundaries and whether defendant's cultivation would include any part of leased premises, there was no error in refusing temporary injunction to prevent defendant from cultivating land adjacent to houses on lease.—Trudie Turpentine Co. v. Pearson, 159 Ga. 387, 125 S.E. 862."

"Where the fundamental right under which the complainant prays equitable relief is based on the alleged existence of an easement in lands of another, and the existence thereof is in substantial dispute be-

tween the parties, the establishment of the right at law is necessary to justify the interference of a court of equity.—Rockaway Rolling Mill v. Delaware, L. & W. R. Co., 103 N.J.Eq. 297, 143 A. 334."

In Real Estate Investment Co. v. Winn, 233 Mo.App. 26, 116 S.W.2d 550, this court ruled that equity will not by injunctive process transfer possession of the property where the right of title thereto is in dispute: "It will not try the question of the right of title by injunction, which must be settled by an action at law."

The sole question here arises from the denial of injunctive relief. Any other rights—legal or equitable—of appellant Electric Company or of the defendants, under the right-of-way easement whether it blanketed the whole of the 147-acre farm, or if only part—then what part—whether the Statute of Frauds applied, and whether or not the agreement was procured by fraud, were not actually litigated below, nor presented here, except for some collateral consideration.

Restated, it must be determined, if the equities were so clear, definite and beyond reasonable substantial dispute and in favor of the petitioner, as to require application of the quick and extraordinary relief of injunction. Were defendants' defenses of indefinite description of the land embraced by the easement, and fraud in procurement, so patently without merit or honest and honorable dispute, as to require a chancellor, in the exercise of judicial discretion, to summarily rule against them, and grant the extreme remedy of injunction? We think not. Moreover, this court does not exercise the primary discretion. It, rather, reviews to determine if there has been a clear abuse of discretion. The provisions of the written instrument itself, as appellant concedes, conveys a perpetual easement across the whole or any part of defendants' farm, rather than on just that part which plaintiff sought and defendants were willing to grant. The written deed was recorded and is a part of the land records. An amendment to a petition for in-

junctive relief is not the best way to repair or restrict its provisions.

It does not appear that this discretion was abused or error committed in dismissing the petition and denying the appellant's prayer for injunction.

The judgment and decree is affirmed.

WEIGHTMAN, Special Judge, and BROADDUS, J., concur.